UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON LAFAYETTE,

                Petitioner,                Case No. 1:19-cv-487

v.                                    Honorable Paul L. Maloney

SHERRY BURT,

                Respondent.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Jason Lafayette is incarcerated with the Michigan Department of Corrections at the

Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  On March

28, 2013, Petitioner pleaded *nolo contendere* in the Calhoun County Circuit Court to armed

robbery, in violation of Mich. Comp. Laws § 750.529.  On May 20, 2013, the court sentenced

Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 30 to 70

years.

      On June 13, 2019, Petitioner filed his habeas corpus petition raising three grounds

for relief, as follows:

      I.      The writ of habeas corpus should be granted vacating Petitioner's plea of *nolo contender[e]* where it is neither voluntary nor an intelligent choice, but was [in]duced from false statements given by [Petitioner's] appointed trial attorney.

      II.     The writ of habeas corpus should be granted where Petitioner's defense attorney was ineffective at sentencing, rendering the proceeding void.

      III.    The writ of habeas corpus should be granted vacating Petitioner's judgment of sentence, and [Petitioner's case should be] remand[ed] . . . back to the

trial court for resissuance of appellate rights, reinstatement of all state post
conviction rights, and for reinstatement of [his] appeal and appointment of
appellate counsel, due to ineffective assistance of appellate counsels.

(Pet'r's Br., ECF No. 2, PageID.25, 32, 37.)   Respondent has filed an answer to the petition

(ECF No. 10) stating that the grounds should be denied because they are without merit.  Upon

review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996,

Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I

recommend that the petition be denied.

## Discussion

## I.    Factual allegations

Petitioner entered a *nolo contendere* plea[1] to a charge of armed robbery.  The trial

court accepted the preliminary examination transcript as a factual foundation of the plea.  During

the preliminary examination, the victims, David Powers and Kathy Barron, testified that Petitioner

and another man beat Powers with a baseball bat, choked him, held him on the ground, dragged

him into his home, and threatened to kill Barron if Powers did not turn money over to Petitioner

and his accomplice.  Powers complied.  But at an opportune moment, Powers fled into the garage

to grab a handgun.  Petitioner followed.  Powers shot him, seriously wounding him.  Powers and

---

[1] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt,
> any claims or defenses which relate to the issue of factual guilt are waived by such a plea.  Claims
> or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become
> irrelevant upon, and are subsumed by, a plea of *nolo contendere*.  Hence, we hold that a plea of *nolo
> contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea
> of guilty.  Only those defenses which challenge the very authority of the state to prosecute a
> defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

Barron locked themselves into the garage and called the police. When the police arrived, Petitioner and his accomplice were gone. Ultimately, however, Petitioner was apprehended when he sought treatment for his wounds.

Petitioner claims that he was talked into the plea by his counsel's representation that the minimum end of Petitioner's indeterminate term-of-years sentence would fall between 8 and 15 years. The representation does not appear in the trial court record, except in affidavits Petitioner filed after he was sentenced to 30 to 70 years.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

4

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies."

*Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.    Ineffective assistance of appellate counsels (habeas ground III)

Having entered a plea of *nolo contendere*, Petitioner's appeal from the judgment of sentence was by leave, not as of right.  After judgment was entered, Petitioner timely requested the appointment of counsel and the trial court appointed Suzanna Kostovski as Petitioner's appellate counsel just a few days after the judgment of sentence was entered.  (Calhoun Cnty. Cir. Ct. Register of Actions, ECF No. 11-1, PageID.135.)

Petitioner reports that Ms. Kostovski did nothing for several months and then, with less than a month remaining to file an application for leave to appeal, she moved to withdraw because of a conflict—she represented a co-defendant.  (Pet'r's Br., ECF No. 2, PageID.37.)  With just days remaining to meet the deadline for Petitioner's application for leave to appeal, the trial court appointed J. Nicholas Bostic to replace Kostovski.  (Calhoun Cnty. Cir. Ct. Register of Actions, ECF No. 11-1, PageID.136.)

Attorney Bostic filed a motion to withdraw Petitioner's plea and for resentencing during May of 2014.  (*Id*.)  Michigan Court Rule 6.310 requires such a motion to be filed within six months of the judgment of sentence.  Mich. Ct. R. 6.310(C).  Attorney Bostic filed the motion within six months of his appointment; but almost a year after judgment.  The court rules provide that a motion seeking to withdraw a plea filed more than six months after judgment must comply with the procedures of the Michigan Court Rules for motion for relief from judgment under Michigan Court Rules 6.500 *et seq*.  Mich. Ct. R. 6.310(C)(3).

6

Even though Petitioner's motion was late, the trial court considered it as a direct review of the plea under Rule 6.310 rather than as a collateral review under Rules 6.500 et seq. (Supp. Mot. Hr'g Tr., ECF No. 11-12, PageID.283) ("Mr. Bostic:  Perhaps I should ask that you issue a ruling as to whether you treated that as a direct review or a collateral review under 6500. The Court:  It is a direct review.").  The Michigan Court of Appeals also refused to penalize Petitioner for the late filing:

> The Court considers defendant's delayed application for leave to appeal under the standard for direct appeals, and not under  the standard for appeals from orders denying relief from judgment pursuant to MCR 6.500 et seq., for the reason that defendant's appointed appellate counsel rendered ineffective assistance of counsel when they failed to file either an application from the judgment of sentence or a motion to withdraw plea in a timely manner and, thereby, deprived defendant of his direct appeal.  *People v Goodman*, 485 Mich 1119; 779 NW2d 254 (201 O); People v Mills, 485 Mich 960; 774 NW2d 524 (2009).

(Mich. Ct. App. Order, ECF No. 11-15, PageID.288.)  Thus, when the trial court and the court of appeals denied Petitioner relief on the merits, the courts denied relief as if the motion and the appeal had been timely filed as measured by the date the judgment of sentence was entered.[2]

In this Court, Petitioner relies on the court of appeals determination that his appellate counsels rendered ineffective assistance.  He contends "[t]he Michigan Appellate Court[] has found that Petitioner's Court[-]appointed appellate attorney[]s were ineffective, but failed to

---

[2] The Michigan Supreme Court likewise considered Petitioner's application for leave to appeal as if it were a direct appeal, rather than a collateral appeal, although the distinction is not as apparent in the supreme court's order.  The supreme court denied leave to appeal "because [the justices were] not persuaded that the questions presented should be reviewed by [the] Court."  (Mich. Order, ECF No. 11-18, PageID.404.)  When the Michigan Supreme Court denies leave to appeal on collateral review, the reason for the denial is stated as "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *See, e.g., People v. Bates*, 917 N.W. 2d 649 (Mich. 2018); *People v. Moore*, 917 N.W.2d 650 (Mich. 2018); *People v. Farrow*, 917 N.W.2d 637 (Mich. 2018); *People v. Brown*, 917 N.W.2d 668 (Mich. 2018).  These cases are a sample of the supreme court's 27 denials of applications for leave to appeal on collateral review on October 2, 2018, two business days after the court denied Petitioner's application.  It appears the supreme court addresses collateral review applications in batches every couple of weeks.

reinstate petitioner's appellate rights, failed to reinstate his Motion for Relief from Judgment, [and] failed to address the Due Process violation regarding the denial of an appeal." (Pet'r's Br., ECF No. 2, PageID.39.)  That contention is simply not correct.

Attorney Kostovski waited an extended time before filing her motion to withdraw; she did not file anything late.  Attorney Bostic was appointed in time to comply with the six-month deadline, even though compliance would have been difficult.  Instead of attempting to comply, however, he filed Petitioner's motion to withdraw his plea late.  The only consequence identified by Petitioner is the prospect that the Michigan courts would consider the late-filed motion under the standards for collateral review rather than direct review.  But the Michigan court offered an immediate remedy that removed that consequence.  Moreover, each appellate court thereafter considered Petitioner's motion, and then his subsequent applications for leave to appeal, as if they were motions and applications on direct review.  Thus, the courts did "reinstate petitioner's appellate rights" and reinstated his motion to withdraw his plea.  Petitioner has already received everything he asks this Court to provide.

Under clearly established federal law, to show ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  A court considering a claim of ineffective assistance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91,

101 (1955)).  Even if a court determines that counsel's performance, in light of the circumstances as they existed at the time of counsel's action, was outside the wide range of reasonable professional assistance, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 690–91.

Because of the remedial steps taken at each level of the Michigan court system, Petitioner cannot show that his appellate counsels' errors had any effect on the judgment. Accordingly, he is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## IV.    Petitioner's plea was unknowing and involuntary (habeas ground I)

Petitioner next complains that he entered into the plea hearing with the misunderstanding that the minimum term of his sentence would fall between 8 and 15 years. Petitioner claims his misunderstanding was brought on by counsel:

> Prior to Petitioner's Plea Hearing for entry of *Nolo Contender[e]*, George Lyons, Petitioner's Defense Attorney, informed him that he expected the sentencing guidelines to be [between 96 months to 180 months].  Mr. Lyons[] informed . . . Petitioner that [counsel's] computation of the guideline ranges was from a "worst case" scenario to demonstrate a potentially higher score than what the Court might have determined so that Petitioner would not be surprised.

(Pet'r's Br., ECF No. 2, PageID.28.)  Petitioner notes, and the record supports, that counsel was obviously taken aback at sentencing when the prosecutor argued for a minimum sentence of 40 years and a maximum sentence of 70 years.  Counsel responded:

> The only issue becomes, your Honor, 40 to 70 is a murder sentence.  I've seen those given out in—in—in the most heinous of homicide cases.  It certainly isn't what was contemplated when we actually cut this deal and nor were the guidelines as they came out.  These things that were cove[r]ed by myself and the prosecution at the time this matter was initially pled out and negotiated.

(Sentencing Hr'g Tr., ECF No. 11-4, PageID.227.)   The only record support for Petitioner's allegation that counsel estimated the minimum sentence range at 8 to 15 years is Petitioner's after-the-fact affidavit; but counsel's statements at the sentencing hearing corroborate, at least generally, the notion that counsel expected something less.

Although the record supports the general claim that counsel expected a lesser sentence and probably discussed that with Petitioner, it is not likely that the range identified by Petitioner was a range suggested by counsel.  Armed robbery is a Class A offense. The sentencing grid for such offenses does not, and did not, include any range of 96 to 180 months.  Mich. Comp. Laws § 777.62.  In fact, there were no ranges for any offense under the guidelines that began at 96 months.  For a Class A offense, the closest range "bottom" to 96 months is 108 months.  *Id*.  Thus, if counsel offered Petitioner a range approximating the range identified by Petitioner, the low end was likely 108 months.

Moreover, for first-time offenders, the top end of the range that begins at 108 months was 180 months—at least that end corresponds to the 15-year maximum minimum suggested by Petitioner.  But that applies only for first-time offenders.  For fourth habitual offenders like Petitioner, the top end of the range beginning at 108 months is 360 months, the actual minimum sentence that Petitioner received.  Certainly, if that were the range actually suggested by defense counsel to Petitioner, the 40-year minimum recommended by the prosecutor would have provoked the response by counsel quoted above.  It would have been 10 years higher than the 30-year maximum minimum provided by the grid that has 108 months at the bottom. Thus, it is not clear that counsel's response supports Petitioner's affidavit averment at all.

The sentencing hearing transcript provides some insight into the offense variable scoring.  Going into the hearing, the offense variables were scored at 136 points.  (Sentencing Hr'g Tr., ECF No. 11-4, PageID.224.)  The net impact of defense counsel's objections reduced the offense variable score by 10 points to 126 points.  (*Id*.)  The most significant contributor to Petitioner's offense variable score was on offense variable 7 for aggravated physical abuse.  (*Id*., PageID.215–219.)  The court concluded that the circumstances of Petitioner's crime satisfied the requirements for that score under Mich. Comp. Laws § 777.37 which now reads:  "A victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."  Mich. Comp. Laws § 777.37.  That conclusion called for the assessment of 50 points on offense variable 7.

Moreover, there was little question that the offense as described by the victims in the preliminary examination—a description that Petitioner, by virtue of his *nolo contendere* plea, did not contest—necessarily implicated dozens of offense variable points.  Even though defense counsel challenged the scoring of two-thirds of the points assessed, the other points assessed were not contested.  Those points alone placed Petitioner at least to OV level III, even if he won every contest regarding the offense variables.

The sentencing hearing transcript does not expressly identify the prior record variable score, but defense counsel's argument discloses that the low end of the minimum sentence range was 270 months.  (Sentencing Hr'g Tr., ECF No. 11-4, PageID.227.)  There is only one grid with a minimum sentence floor of 270 months—the highest grid for Class A offenses.  Mich. Comp. Laws § 777.62.  That means Petitioner was not only at the highest offense variable category,

he was at the highest prior record variable category as well.[3]  Petitioner's minimum sentence range, therefore, was 270 to 900 months.  Moreover, in that prior record variable category, every possible offense variable score included the 30-year minimum sentence that Petitioner actually received in the possible range of sentences.  *See* Mich. Comp. Laws § 777.62, as adjusted for Petitioner's habitual offender status per Mich. Comp. Laws § 777.21.

Additionally, this was not Petitioner's first sentencing or his first plea.  The Michigan Department of Corrections Offender Tracking Information System indicates that Petitioner had been imprisoned following guilty pleas in at least two other Calhoun County cases. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=397650 (visited Mar. 13, 2021).  Petitioner was certainly not a novice when it came to the plea process or application of the sentencing guidelines.  And Petitioner's co-defendant entered a plea just four days after Petitioner, but was sentenced before Petitioner.    *See*  https://courts.michigan.gov/opinions_orders/ case_search/pages/default.aspx?SearchType=1&CaseNumber=318857&CourtType_CaseNumbe r=2 (visited Mar. 15, 2021).    Petitioner's co-defendant was sentenced to 28 to 50 years' imprisonment.    *See*  https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=350552 (visited Mar. 15, 2021).  It is against that backdrop that the Court evaluates Petitioner's claim that counsel advised Petitioner his minimum sentence would—worst case scenario—involve a 15-year minimum sentence.

Petitioner claims that his plea was not voluntary and intelligent.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty

---

[3] The prosecutor stated that Petitioner had almost two dozen contacts with law enforcement as an adult as well as 17 juvenile petitions.  (Sentencing Hr'g Tr., ECF No. 11-4, PageID.225.)

made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it[.]" *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Petitioner does not claim that he was incompetent or that he did not understand the nature of the charges he faced.

The plea must also be voluntary in the sense that it is not the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). Petitioner does not claim he was coerced into his plea decision.

The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation

13

omitted).  Finally, the defendant must have available the advice of competent counsel.  *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of counsel will render a plea of guilty involuntary.  *See Hill*, 474 U.S. at 56-57.

Petitioner's challenge to the voluntariness of his plea is based on his claim that he did not know the consequences of the plea—that his minimum sentence would exceed the range of 8 to 15 years—and that his ignorance of that fact is a product of counsel's ineffective assistance.[4] The two-part *Strickland* test discussed above applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is

---

[4] Petitioner's argument to the state courts included that claim, but it also included additional challenges based on state-law requirements for plea proceedings.  Petitioner argued in the state courts that the court's plea colloquy failed to comply with the specific requirements of Mich. Ct. R. 6.310(B)(1), (2), and (4).  (Mot. Hr'g Tr., ECF No. 11-10, PageID.260–262.)  Because of those failures, Petitioner claimed entitlement to withdraw his plea under Mich. Ct. R. 6.310.  A state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794–95 (6th Cir. 1991).  Consequently, the questions whether the court complied with the specific intricacies of state law regarding plea-taking or whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus, except to the extent those inquiries overlap clearly established federal law regarding the voluntary and knowing character of the plea.

on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

Petitioner makes that claim here.  Petitioner contends his counsel rendered ineffective assistance when he advised Petitioner that a plea of guilty would result in probation rather than a prison sentence.  He supports that contention with his affidavit.  The state court did not specifically address the credibility of Petitioner's claim.  For the reasons set forth above, however, the undersigned finds Petitioner's claim to be incredible.  Nonetheless, if counsel gave that advice, in light of the minimum sentence range based upon the likely scoring of the sentencing guidelines and the statutory maximums as enhanced by Petitioner's habitual offender status, it would have been professionally unreasonable.  Even in that circumstance, however, Petitioner could not show any prejudice.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself.  *Garcia,* 991 F.2d at 326.  A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of

voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97 (5th Cir. 1976)).

The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also a § 2255 case. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

16

Petitioner's claim that he was unaware that he might receive a minimum prison sentence that exceeded the range of 8 to 15 years, and would not have entered a plea if he had known he might receive a longer minimum prison sentence, are directly contrary to his admissions during the plea hearing.  The court specifically advised Petitioner that his sentence for armed robbery could be life imprisonment.  (Plea Tr., ECF No. 11-3, PageID.202–203.)  The trial judge asked Petitioner if he understood the potential penalties; Petitioner responded "Yes, sir."  (*Id.*) Petitioner did not object; he did not raise any concern at that time that a life sentence would be inconsistent with his counsel's representation regarding a 15-year minimum.  Petitioner is bound by his statements.  The plea colloquy forecloses his present claim.

Whether or not counsel advised Petitioner that his plea would result in a minimum sentence of 15 years or less, Petitioner cannot show prejudice.  The court corrected any possible misperception counsel created.  If Petitioner entered that hearing believing that he would receive a sentence with a maximum minimum sentence of 15 years, the court disabused him of that belief when he told Petitioner the actual sentence Petitioner could receive: life imprisonment. Nonetheless, despite that understanding, Petitioner still entered his plea.

Moreover, Petitioner's suggestion that if he had only known the extent of his sentence exposure he would not have taken the plea is not particularly credible.  Both victims knew Petitioner and identified him.  One of the victims shot Petitioner and Petitioner was indeed hospitalized for 10 days with gunshot wounds.  Petitioner intimates that his victim misrepresented their prior relationship and that, somehow, that misrepresentation might have afforded Petitioner a defense—but it is not clear how.  The closest thing to a defense that appears in the record is a suggestion that Petitioner wrongfully believed that the victim owed him money.  It is not clear

how such a debt would have justified that brutal attack and threats that constituted the crimes with which Petitioner was charged.  If Petitioner had been permitted to withdraw his plea, it would have simply left him in the difficult position of facing a trial with bleak prospects for acquittal and a significant sentence exposure.  Petitioner's minimum sentence could have been 40, 50, 60, or even 75 years.  Thus, even if Petitioner's plea were based on bad advice regarding his sentence exposure, Petitioner has not convincingly demonstrated that he would have made a different decision with proper advice.

Because Petitioner cannot show prejudice, Petitioner has failed to show that the trial court's and then the Michigan Court of Appeals' rejection of his ineffective assistance of counsel claim as meritless is contrary to, or an unreasonable application of, *Strickland*.[5] Accordingly, Petitioner is not entitled to habeas relief on this claim.

## V.    Counsel rendered ineffective assistance at sentencing (habeas ground II)

Petitioner next objects to the ineffective assistance of his trial counsel at sentencing. Petitioner complains that, at the sentencing hearing, the prosecutor provided materials that were in the file for Petitioner's co-defendant's sentencing relating to offense variable 4, including a report from the victim that he was receiving psychological treatment for post-traumatic stress disorder and a report from a physician's assistant confirming that diagnosis.  Petitioner argues in this Court that counsel should have objected because those materials were inadmissible hearsay and because Petitioner was denied his right to confront the witnesses against him.

---

[5] The trial court addressed Petitioner's claim as if he were arguing that the plea agreement included a promise that the minimum sentence would fall within the range of 8 to 15 years.  (Mot. Hr'g Tr., ECF No. 11-10, PageID.262–263.) However, Petitioner acknowledged that the plea agreement did not include any terms regarding Petitioner's sentence. (Aff., ECF No. 11-5, PageID.245–246.)   Nonetheless, the trial court's conclusion that Petitioner could not show prejudice—the result—is still not contrary to, or an unreasonable application of, *Strickland*.

The argument presented to this Court is a trimmed down and altered version of the argument Petitioner presented to the state courts.  In his motion for relief from judgment, Petitioner also challenged the scoring of offense variable 7 and offense variable 10.  Petitioner also raised a challenge to his sentence because it was based on "judge-found" facts, in violation of Petitioner's Sixth Amendment right to a jury trial under the Sixth Amendment, as discussed in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  Additionally, on appeal, Petitioner raised a challenge to his sentence as disproportionate.  Petitioner does not repeat those challenges in this Court.

Moreover, the issue Petitioner raises regarding offense variable 4 in this Court is different than the argument offered in the state courts.  In his motion for relief from judgment, Petitioner's argument with regard to offense variable 4 centered on the trial court's failure to give Petitioner time to "investigate and determine whether the government can establish [by a preponderance] of the evidence that the treatment actually occurred and [was] related to this incident."  (Pet'r's Br. in Supp. of Mot. for Relief from J., ECF No. 11-5, PageID.239.)  The ineffective assistance of counsel argument in the state courts was directed solely toward counsel's failure to properly advise Petitioner regarding his minimum sentence.  (*Id*., PageID.241–244.) There is no mention of counsel's failure to object to hearsay or a Confrontation Clause violation. Petitioner's court of appeals brief likewise makes no mention of objectionable hearsay or a Confrontation Clause violation, nor does his application for leave to appeal to the Michigan Supreme Court.

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so

that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138–39.

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Petitioner has not raised his hearsay or Confrontation Clause arguments in the state court at all; nor has he raised an ineffective assistance of counsel claim based on counsel's failure to object to hearsay or a Confrontation Clause violation.  Thus, Petitioner has not met his burden.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.   28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise his hearsay and Confrontation Clause issues or the ineffective assistance claims based thereon.  He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.*  Under Michigan law, one such motion may be filed after August 1, 1995.  Mich. Ct. R. 6.502(G)(1).  Petitioner has not yet filed his one allotted motion.

Although Petitioner's failure to exhaust these claims in the state courts prevents this Court from granting habeas relief, it does not foreclose denying such relief on the merits. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that a district court should deny a stay where unexhausted claims are meritless because, under 28 U.S.C. § 2254(b)(2) such claims may be properly denied); *Smith v. Nagy*, 962 F.3d 192, 204 (6th Cir. 2020) (court rejected unexhausted claim on the merits citing 28 U.S.C. § 2254(b)(2)); *Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009) (explaining that a district court may "ignore the exhaustion requirement altogether and *deny* the petition if *none* of the petitioner's claims has any merit") (emphasis in original). None of Petitioner's claims has merit; accordingly, the Court will consider, and deny relief on, Petitioner's unexhausted claims.

Petitioner's contention that the evidence regarding the victim's report or the report of the victim's physician's assistant was inadmissible hearsay under state law is simply wrong. In *People v. Uphaus*, 748 N.W. 2d 899 (Mich. Ct. App. 2008), the Michigan Court of Appeals explained:

> Defendant now argues that the trial court deprived him of his right to confront the witnesses against him by permitting this hearsay testimony. See *People v. Chambers*, 277 Mich.App. 1, 10, 742 N.W.2d 610 (2007). However, a sentencing hearing is not a criminal trial. And many of the constitutional requirements applicable to criminal trials do not apply at sentencing. *United States v. Hamad*, 495 F.3d 241, 246 (C.A.6, 2007), citing *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The rules of evidence do not apply to a sentencing proceeding, see MRE 1101(b)(3), "and due process does not require otherwise . . . ." *Hamad*, *supra* at 246. Thus, when considering a defendant's sentence, a trial court may properly rely on information that would otherwise not be admissible under the rules of evidence. See *People v. Potrafka*, 140 Mich.App. 749, 751–752, 366 N.W.2d 35 (1985). Indeed, the "right to confront adverse witnesses and to prohibit the introduction of testimonial hearsay without cross-examination does not apply at sentencing." *Hamad*, *supra* at 246.

*Uphaus*, 748 N.W.2d at 905.  The *Uphaus* opinion captures not only the state rules regarding admissible evidence at sentencing, it also accurately states the federal constitutional limitations. In *United States v. Christman*, 509 F.3d 299 (6th Cir. 2007), the Sixth Circuit set out those limitations in much the same way that the *Uphaus* court did:

> "A sentencing hearing . . . is not a criminal trial, and many of the constitutional requirements of a criminal trial do not apply at sentencing." *United States v. Hamad*, 495 F.3d 241, 246 (6th Cir. 2007). Thus, it is well established that neither the rules of evidence nor the right to confront witnesses applies at sentencing. *Id.*; *United States v. Brika*, 487 F.3d 450, 457 (6th Cir. 2007). "Congress prefers the inclusion rather than the exclusion of information at sentencing, *see* 18 U.S.C. § 3661 ('No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.') . . . ." *Hamad*, 495 F.3d at 246.

*Christman*, 509 F.3d at 304.  Petitioner cites no contrary authority, much less clearly established federal law.  And, because Petitioner's hearsay and Confrontation Clause arguments have no merit, it was not ineffective assistance for counsel to forego raising those objections. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

The state courts' rejections of Petitioner's claims that his sentence was constitutionally infirm are neither contrary to, nor unreasonable applications of, clearly established federal law.  Moreover, considered *de novo*, Petitioner's claims challenging his sentence have no merit.  Accordingly, Petitioner is not entitled to habeas relief.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of

appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:    April 15, 2021                                    /s/ Ray Kent
                                                                       Ray Kent
                                                                       United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).